UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY MARLAN HAYNES #224393,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                              Case No. 1:23-cv-1111

BRYAN MORRISON et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on the Motion for Summary Judgment on the Basis of Exhaustion of Defendants Morrison and Rurka. (ECF No. 16.) Plaintiff has failed to respond to Defendants' motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court grant the motion and dismiss Plaintiff's claims against Defendants Morrison and Rurka **without prejudice** for lack of exhaustion.

**I.   Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility, initiated this action on October 18, 2023, by filing a complaint against MDOC employees Warden Bryan Morrison, then-Deputy Warden Troy Chrisman, Lt. Jason Carter, Capt. Christopher Dekeyser, Lt. Michael Marriott, Sgt. Katrina

---

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

Garrett, and Deputy Warden Russell Rurka, alleging claims pursuant to 42 U.S.C. § 1983 based on events that occurred at Lakeland Correctional Facility (LCF) from December 2021 through February 14, 2022. (ECF No. 1.)

Plaintiff alleges that on December 27, 2021, he was placed on administrative segregation status and put into a temporary holding cage that measured five by six feet and was located in the control center building at LCF. Plaintiff states that there was no toilet or running water, just a bare cage. Plaintiff was instructed to take off his shoes and coat and was given an orange jumpsuit in exchange for his clothing. Plaintiff was given a mat and one sheet, but the mat was too big for the space and had to be folded in order to open the door. (*Id.* at PageID.5.)

On December 29, 2021, Defendant Chrisman informed Plaintiff that he would be staying in the holding cage until he could be transferred to another facility. At that time, Plaintiff told Defendant Chrisman of the conditions in the holding cage, but Defendant Chrisman did not express any interest or concern. (*Id.*) Plaintiff states that eight weeks prior to his placement in the holding cage he had been given a triple spinal infusion with hardware to his lumbar spine, and that being in such a confined space caused him great physical pain. (*Id.* at PageID.8.)

Plaintiff was kept in the holding cage for 26 days, during which he was not allowed to use the bathroom when needed, but was at the mercy of whomever he could stop and beg to be taken to the restroom. Plaintiff states that at times he was forced to urinate into Styrofoam cups that he had hoarded from his meal trays. On one trip to use the toilet, Plaintiff was carrying six cups of urine to empty. Defendant Garrett asked Plaintiff what was in the cups, and he responded honestly. Defendant Garrett threatened Plaintiff with a class I misconduct should he ever dispose of his urine in such a manner again. All of Plaintiff's cups were subsequently confiscated. (*Id.* at PageID.5-6.)

Plaintiff states that he was required to eat all his meals on the ground and was not allowed to wash his hands prior to eating. Plaintiff further states that all of his meals were served cold and that when he complained, Defendant Marriott told him that they did not have time to wait on him. (*Id.* at PageID.6.) Plaintiff alleges that he was not allowed out of the cage for any reason except to use the toilet approximately twice a day. On several occasions, Plaintiff was not allowed out of the cage to have a bowel movement, which was very painful. Plaintiff states that each day he asked Defendants Marriott, Dekeyser, Carter, and Chrisman for a change of underclothing, but all his attempts were unsuccessful until January 12, 2022. Plaintiff was not given clean underwear for a period of sixteen days. (*Id.*)

After about twenty days, Plaintiff was able to get a health care kite and kited mental health, stating that he was experiencing panic attacks. Plaintiff was seen by a mental health counselor whose name he cannot recall but thinks it was Smith or Brown. Plaintiff states that she spent less than five minutes telling Plaintiff how to manage his panic attacks but told him that she could not get him moved out of the cage. Plaintiff states that he asked Defendant Carter every day if he could be moved or at least be let out of the cage for some exercise time. Defendant Carter always responded that it was up to Defendant Chrisman. (*Id.* at PageID.6-7.)

On January 20, 2022, Plaintiff spoke with Defendant Rurka, who had been made Assistant Deputy Warden, and asked to be moved out of the cage. Defendant Rurka told Plaintiff that it was up to Defendant Chrisman. (*Id.* at PageID.7.) On the same day, Plaintiff spoke to non-Defendant Lieutenant Taggett, who was somewhat sympathetic to Plaintiff's situation, and she brought Plaintiff four grievance forms. Plaintiff filled them out immediately. (*Id.*)

On January 21, 2022, Plaintiff was moved into a segregation cell in building D. (*Id.* at PageID.8.) On February 1, 2022, Plaintiff was moved, along with several other prisoners, to

building B recreation room which had been fitted with several bunkbeds. On February 7, 2022, several prisoners had an issue with the community television being shut off at midnight. Defendant Rurka came in the next day and told all of the prisoners that there were three cages up in the control center that he was more than happy to use. Plaintiff states that this demonstrates that the purpose for using the cages was to punish. (*Id.*) Plaintiff submitted a complaint to the Office of the Legislative Corrections Ombudsman on April 1, 2022. (*Id.*)

## II. Applicable Standard

Defendants Morrison and Rurka move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies against them. Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). In addition, because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court must ensure that "no reasonable trier of fact could find other than for [Defendant]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

## III. Discussion

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). This process must be completed at all levels prior to filing an action in federal court. *Freeman v Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

In support of their motion, Defendants have submitted a Step III Grievance Report for Plaintiff dated November 8, 2023, which shows the grievances arising out of LCF that Plaintiff pursued through Step III prior to initiating this action. (ECF No. 17-3.) The Step III report shows that Plaintiff filed four grievances in February and March 2022: (1) LCF-22-01-0097-27B (0097 Grievance); (2) LCF-22-01-0098-27B (0098 Grievance); (3) LCF-22-01-0099-28C (0099 Grievance); and (4) LCF-22-01-0096-22G (0096 Grievance). (*Id.* at PageID.104–05.) The 0097 Grievance named Defendants Carter, Garrett, and Chrisman at Step I. (*Id.* at PageID.117.) The 0098 Grievance named Defendants Garrett and Carter at Step I. (*Id.* at PageID.114.) The 0099 Grievance named Defendants Carter, Marriott, Garrett, and Dekeyser at Step I. (*Id.* at PageID.111.) Finally, the 0096 Grievance named Defendants Carter, Marriott, Dekeyser, and Chrisman at Step I. (*Id.* at PageID.108.) None of these Grievances named Defendants Morrison or Rurka at Step I or at any other step in the grievance process.

Defendants Morrison and Rurka have properly satisfied their summary judgment burden of showing that Plaintiff failed to exhaust his administrative remedies against them. "Under the [MDOC's] procedural rules, inmates must include the . . . 'names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *see also Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017) (citing *Reed–Bey*, 603 F.3d at 324–25) ("Requiring inmates to exhaust prison remedies in the manner the State provides—

5

by, say, identifying all relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.")). Accordingly, Plaintiff's claims against Defendants Morrison and Rurka are subject to dismissal for lack of proper exhaustion.

## CONCLUSION

For the foregoing reasons, I recommend that Defendant Morrison and Rurka's motion for summary judgment (ECF No. 16) be **granted** that Plaintiff's claims against them be **dismissed without prejudice**.

Dated: December 16, 2024                                         /s/ Sally J. Berens
                                                                 SALLY J. BERENS
                                                                 U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).