UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY MARLAN HAYNES #224393,

    Plaintiff,                                   Hon. Paul L. Maloney

v.                                                             Case No. 1:23-cv-1111

BRYAN MORRISON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff, a state prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility, filed a complaint on October 18, 2023, pursuant to 42 U.S.C. § 1983 against several MDOC employees alleging Eighth Amendment conditions-of-confinement claims based on events that occurred at Lakeland Correctional Facility (LCF) from December 2021 through January 2022. The remaining Defendants in the case include then-Deputy Warden Troy Chrisman, Lt. Jason Carter, Capt. Christopher Dekeyser, Lt. Michael Marriott, and Sgt. Katrina Garrett.

    Presently before me is Defendants' Motion for Summary Judgment. (ECF No. 42.) Plaintiff has responded (ECF No. 45), and Defendants have replied. (ECF No. 51.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED,** and that Plaintiff's complaint be **dismissed with prejudice**.

### I. Background

    On December 27, 2021, Plaintiff was issued a temporary segregation cell admission after he requested protection due to fear for his safety because he owed other prisoners a drug debt of

approximately $1,000 "for smoking K2." (ECF No. 43-1 at PageID.214; ECF No. 43-2 at 217.) Following a Security Classification Committee review, Deputy Warden Chrisman and Resident Unit Manager Shaw recommended that Plaintiff be placed in an alternative Level II facility. (ECF No. 43-1 at PageID.214.) Initially, Plaintiff was placed in a Control Center holding cell for protection because temporary segregation space was being used for a COVID-19 quarantine and was unavailable for Plaintiff. (*Id.* at PageID.213; ECF No. 43-2 at PageID.217.) Plaintiff remained in the Control Center holding cell until January 21, 2022, when he was moved to a temporary segregation cell. (*Id.*) Subsequently, on March 10, 2022, Plaintiff was transferred to Thumb Correctional Facility. (*Id.*)

Plaintiff's extended stay in the holding cell was largely due to the environmental conditions at LCF resulting from the COVID-19 outbreak during January 2022. On January 5, 2022, LCF was placed on outbreak status for COVID-19. On January 6, 2022, Plaintiff was scheduled for a January 13, 2022 transfer to the Thumb Correctional Facility. However, on January 12, 2022, the transfer was cancelled due to the COVID-19 outbreak at LCF. (*Id.* at PageID.217, 227–52.) On January 21, 2022, LCF was placed on facility-wide COVID-19 outbreak status. The same day, Plaintiff was moved from the Control Center holding cell to a temporary segregation cell that had become available. (*Id.* at PageID.218.) On February 7, 2022, LCF was removed from outbreak status, but two units remained under quarantine. (*Id.*)

Plaintiff complains of the following conditions while he was confined in the Control Center holding cell:

- Restroom usage. Plaintiff alleges that he was "not allowed to use the bathroom when needed." He states that at times he was forced to urinate into styrofoam cups that he carried to the restroom to empty. Plaintiff claims that, on one occasion, Defendant Garrett threatened him with a Class I misconduct for doing this, told him that he was never allowed to do this again, and confiscated Plaintiff's cups. (ECF No. 1 at PageID.5–6.) Plaintiff testified that there was

2

never a time during his stay in the holding cell where he urinated or defecated in the cell because he could no longer hold it. (ECF No. 43-3 at PageID.269.) Plaintiff testified that he was permitted to use the bathroom an average of two times per day, although some days he was permitted to use the bathroom three or four times per day. (*Id.*)

- Meals. Plaintiff alleges that he was required to eat his meals on the ground and was not allowed to wash his hands prior to eating. (ECF No. 1 at PageID.6.) Plaintiff alleges that all of his meals were served cold because the food trays were allowed to sit out for some time before Plaintiff received them. Plaintiff claims that he asked Lt. Marriott for his trays earlier when they were delivered, but Marriott responded, "this ain't Burger King[,] you don't get it how you want it[.]" (*Id.*) Plaintiff testified that he blames Defendant Marriott for not providing him hot meals. (ECF No. 43-3 at PageID.270.)

- Underwear. Plaintiff alleges that he asked Defendants Marriott, Dekeyser, Carter, and Chrisman for a change of underwear, but he did not get a change until January 12, 2022. (ECF No. 1 at PageID.6.) Plaintiff testified that he "was in the same pair of underwear and T-shirt for 16 days." (ECF No. 43-3 at PageID.198.)

- Yard time. Plaintiff alleges that he "asked Lt. Carter every day to be moved or at least to let [him] out for some recreation time," but each time Carter denied his request because it was up to Defendant Chrisman. (ECF No. 1 at PageID.7.) Plaintiff testified that he never got any yard time. (ECF No. 43-3 at PageID.276.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

3

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

#### A.    Official Capacity Claims

Plaintiff sues all Defendants in both their official and individual capacities. Defendants contend that Plaintiff's claims against them for money damages in their official capacities must be dismissed as barred by the Eleventh Amendment. Plaintiff concedes this point. (ECF No. 45 at PageID.306.) Therefore, Plaintiff's official capacity claims for money damages must be dismissed. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

#### B.    Personal Involvement

Defendants contend that Plaintiff's claims against them fail because they were not involved in the alleged unconstitutional violations. It is well established in the Sixth Circuit that, to state a cognizable claim under Section 1983, a plaintiff must allege personal involvement by each of the named defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). A plaintiff must present evidence of the defendant's involvement in the alleged constitutional deprivation to defeat a summary judgment motion. *Bennett v. Schroeder*, 99 F. App'x 707, 713 (6th Cir. 2004); *see also Lentz v. Anderson*, 888 F. Supp. 847, 850 (N.D. Ohio 1995) ("Because there is no evidence that Governor Voinovich, Department of Rehabilitation and Correction Director Wilkinson, OPI Director Anderson, and OPI Manager Mustard were personally involved in the prison's decision-making process which led to plaintiff's allegations of cruel and unusual punishment, they will be dismissed from any § 1983 liability.").

In support of their argument as to their lack of personal involvement, Defendants submit affidavits explaining why they were not involved in the alleged violations. (ECF Nos. 43-4–43-8.)

4

However, the affidavits of Defendants Marriott and Garrett are neither signed nor notarized. Because these affidavits are unsigned and unsworn, they must be disregarded in deciding Defendants' motion for summary judgment. *See Sfakianos v. Shelby Cnty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012) (holding that the district court properly declined to consider the plaintiff's affidavit in ruling on the defendant's motion for summary judgment because "affidavits must be signed and properly attested to be cognizable under Rule 56"); *Spencer v. Morgan*, No. 1:14CV696, 2016 WL 6926351, at *3 (S.D. Ohio Nov. 28, 2016) ("[T]he Court declines to consider Plaintiff's unsworn and unsigned affidavit, as it does not comport with the Federal Rules of Civil Procedure.").

Defendant Chrisman states that, as the Deputy Warden, he was not responsible for assigning bathroom breaks or yard recreation time for prisoners held in the temporary holding cells in the Control Center area. He states that Control Center officers or sergeants on duty would have been responsible for those activities. (ECF No. 43-4 at PageID.286.) Defendant Chrisman states that he was never informed that Plaintiff was not provided bathroom breaks or yard time. (*Id.*) Defendant Dekeyser states that he did not interact with Plaintiff during his time in the temporary holding cell in December 2021 and January 2022. (ECF No. 43-5 at PageID.289.) He further asserts that the Control Center officers and sergeants on second shift, from 2 p.m. to 10 p.m., would have been responsible for arranging yard time for prisoners held in the temporary holding cells, and that, in his position as Captain, he lacked authority to move prisoners from segregation to a housing unit. (*Id.*) Finally, Defendant Carter states that his interaction with Plaintiff while he was in the temporary holding cell, if any, would have been minimal. Like Defendant Dekeyser, Defendant Carter asserts that second shift officers and sergeants would have been responsible for arranging yard time for prisoners held in the Control Center cells and that Control Center staff

5

would have been responsible for ensuring that prisoners in those cells were allowed to use the bathroom. (ECF No. 43-6 at PageID.292.) Carter states that he does not recall Plaintiff asking him to use the bathroom, but if he had, Carter would have directed him to the Control Center officer on duty. (*Id.*)

As Defendants Chrisman and Carter's affidavits demonstrate, they were not responsible for arranging yard time or bathroom usage for prisoners being held in the temporary holding cells. Defendant Dekeyser's affidavit demonstrates that he was not responsible for arranging yard time for those prisoners. Plaintiff offers no proper summary judgment evidence, such as an affidavit or declaration, to refute these affidavits. Accordingly, Defendants Chrisman, Carter, and Dekeyser have demonstrated that they lacked personal involvement in the areas addressed in their affidavits.

Plaintiff argues in his response that Defendant Chrisman cannot escape liability because he supervised all Defendants and, similarly, Defendant Dekeyser was the shift supervisor. This argument fails because a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Supervisory liability attaches only if the plaintiff shows that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [defendant]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted). Because Plaintiff fails to show that Defendants Chrisman or Dekeyser implicitly authorized, approved of, or knowingly acquiesced in the denial of bathroom breaks or yard recreation time for Plaintiff, his assertion of supervisory liability must be rejected.

### C. Qualified Immunity

Defendants move for qualified immunity on Plaintiff's individual capacity Eighth Amendment claims. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a

8

substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.   Extended Placement in the Holding Cell

Plaintiff contends that placement in the Control Center holding cell for 26 days constituted an unconstitutional condition of confinement. Plaintiff disputes Defendants' characterization of the area as a "segregation cell." Rather, he contends that it was a 5' x 6' "cage" without a toilet or running water and little room to move about. He further disputes Defendants' description of the 26 days he spent in the holding cell or cage as "temporary." (ECF No. 45 at PageID.308.)

As Defendants have shown, however, Plaintiff was placed in the holding cell not as punishment, but because prison officials had no other option to ensure Plaintiff's safety under the circumstances they faced. Defendants have presented evidence showing a difficult situation at LCF during the time in question. Plaintiff wanted protection from other prisoners who were in general population because of his drug debt, but temporary segregation cells were unavailable because they were needed for COVID-19 quarantine space. (ECF 43-2 at PageID.217.) Unfortunately, Plaintiff was kept in the holding cell longer than had been intended because his transfer to Thumb Correctional Facility was canceled on January 12, 2022. Nonetheless, Defendants have demonstrated a legitimate penological interest for keeping Plaintiff in the holding cell until a segregation cell was available. (*Id.*) In addition, even with the uncomfortable and restrictive conditions Plaintiff endured, he fails to present proper summary judgment evidence showing that he faced a sufficiently serious risk to his health or safety as a result of his extended detention in the holding cell. And, as set forth below, Plaintiff fails to show that he was denied a necessity of life, such as food or water.

Plaintiff contends that Defendants' motion should be denied because they had options other than the holding cell to house Plaintiff while protecting him from the prisoners he feared.[1] Plaintiff alleges, for example, that classrooms in the D building that had been converted for COVID-19 positive prisoners were available to house him, and that "at least 50 bunks" were available in the school building. (ECF No. 45 at PageID.303.) He also claims that he could have been transferred to another facility, as he overheard an LCF staff member tell another prisoner in a nearby holding cell that he was being transferred to another prison due to his drug trafficking. (*Id.* at PageID.307.) However, the unsworn and inadmissible statements in Plaintiff's response are not sufficient to create a genuine issue of material fact. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (finding the nonmoving party's inadmissible hearsay insufficient to defeat summary judgment because "'[e]vidence submitted in opposition to a motion for summary judgment must be admissible'" and "'[h]earsay evidence . . . must be disregarded'" (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997))); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (noting that hearsay evidence may not be considered on summary judgment). Thus, Plaintiff fails to create an issue of fact regarding the availability of other housing options.

---

[1] Plaintiff also argues that MDOC policy prohibited use of the holding cell to house Plaintiff for any substantial period of time. But even if Defendants violated policy by keeping Plaintiff in the holding cell for 26 days, it would not necessarily follow that Defendants violated the constitution, as alleged violations of MDOC policy do not rise to the level of a violation or deprivation of a federal constitutional right cognizable under Section 1983. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (ruling that "failing to follow proper procedures is insufficient to establish an infringement of a liberty interest," and citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, *1 (6th Cir. April 21, 1995) (failure to follow MDOC Policy Directive does not rise to the level of a constitutional violation because the Directive does not create a liberty interest protected by the Fourteenth Amendment's Due Process Clause).

### 2. Bathroom Breaks

Plaintiff alleges that he was denied bathroom breaks during his stay in the holding cell. The Supreme Court has recognized that "a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation" can violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). In *Tate v. Campbell*, 85 F. App'x 413 (6th Cir. 2003), the Sixth Circuit observed that forcing a prisoner to "publicly soil themselves may create a constitutional violation," but "mere feelings of discomfort associated with 'having a full bladder'" do not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 417. In *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999), the Sixth Circuit held that the plaintiff's allegations that the defendants were deliberately indifferent to his health and safety by not allowing him to use the toilet and allowing him to sit in his own urine for two 8-hour periods failed to establish a constitutional violation. *Id.* at 309–10. As support, the *Hartsfield* court cited a previous Sixth Circuit case, *Stephens v. Carter County Jail*, No. 86-5565, 1987 WL 36997 (6th Cir. Apr. 10, 1987), which held that the plaintiff's confinement in a holding cell for a 20-hour period without use of a toilet, except upon release, did not constitute cruel and unusual punishment.

In the present case, although Plaintiff alleges infrequent bathroom breaks, the evidence shows that he was permitted to use the bathroom an average of two times per day and on other days three or four times. (ECF No. 43-3 at PageID.269.) Furthermore, it is undisputed that Plaintiff never soiled himself because he was unable to use the restroom. (*Id.*) Although Plaintiff may have had discomfort on some occasions, as the foregoing cases demonstrate, he fails to cite any case supporting the argument that he was subjected to conditions that violated the Eighth Amendment. Plaintiff fails to demonstrate that Defendants violated clearly established law pertaining to a prisoner's Eighth Amendment right to bathroom breaks.

### 3. Cold Meals

Plaintiff does not allege that he missed any meals while he was confined in the holding cell; rather, he claims his meals were served cold. As Defendants note, Plaintiff does not specifically address this issue in his response. Therefore, he is deemed to have abandoned this aspect of his claim. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (holding that the district court properly concluded that plaintiff abandoned claims where his opposition to summary judgment "did not properly respond to the arguments asserted" by the defendant). In any event, as Defendants note, a prisoner's claim that he was served cold meals not only fails to implicate the Eighth Amendment, but has been characterized as frivolous. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (noting that "a complaint about the preparation or quality of prison food . . . would generally be far removed from Eighth Amendment concerns"); *Strauss v. Ray*, No. 99-5370, 2000 WL 875690, at *2 (6th Cir. June 19, 2000) ("Strauss's claim that the defendants served him cold meals lacks an arguable basis in law because his allegations, while unpleasant, do not amount to a constitutional deprivation.") (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (holding that prisoner's claim that he was denied his Eighth Amendment rights when he was served cold food was frivolous). Therefore, Plaintiff fails to demonstrate a constitutional violation based on being served cold meals.

### 4. Denial of Change of Underwear

Plaintiff further claims that he remained in the same underwear and T-shirt for 16 days. As with the cold meals issue, Defendants contend that Plaintiff waived this issue due to his lack

of response to their argument in their opening brief. Indeed, Plaintiff makes only a passing reference to this issue in his response without presenting any substantive argument. (ECF No. 45 at PageID.303.) Plaintiff is thus deemed to have abandoned this portion of his claim.

Regardless of abandonment, however, courts have recognized that, without more, being denied freshly laundered underwear for similar periods of time does not amount to an extreme deprivation that implicates the Eighth Amendment. As Defendants note, the Sixth Circuit has found that being required to "wear the same shirt, shorts, and underwear" for five days does not state an Eighth Amendment claim. *Fox v. Jenkins*, No. 24-1200, 2025 WL 790919 (6th Cir. Feb. 10, 2025). While the period at issue here is three times longer than in *Fox*, the *Fox* court cited cases from other jurisdictions holding that deprivations of clean underwear for longer periods of time—14, 15, and 30 days—did not violate the Eighth Amendment. *Id.* at *2 (citing *Stallworth v. Wilkins*, 802 F. App'x 435, 444 (11th Cir. 2020) (per curiam) (30 days); *Wiley v. Kentucky Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. Nov. 21, 2012) (14 days); *McCorkle v. Walker*, 871 F. Supp. 555, 557 (N.D.N.Y. 1995) (15 days)). More recently, in *Turner v. Long*, No. 3:20-CV-813, 2025 WL 2200748 (W.D. Ky. Aug. 1, 2025), the court held that the plaintiff failed to satisfy the objective component of an Eighth Amendment claim where he alleged that he was required to wear the same pair of paper boxer shorts for 22 days without providing sufficient "details regarding the conditions he was subjected to, such as the extent of any contamination or the effects therefrom." *Id.* at *15. As in *Turner*, in this case, Plaintiff simply alleges that he went 16 days without clean underwear, but he fails to show that he was exposed to extreme or hazardous conditions due to this situation. As such, Plaintiff fails to demonstrate that he was exposed to conditions that violated the Eighth Amendment.

### 5. Lack of Yard Time

Plaintiff alleges that he did not get any recreation or yard time during the 26 days he was housed in the holding cell. (ECF No. 43-3 at PageID.276.) Defendants contend that Plaintiff fails to demonstrate an unconstitutional deprivation based on the period of time at issue, as multiple circuits have held that denials of out-of-cell time or exercise ranging from 21 days to 90 days did not violate the Eighth Amendment. (ECF No. 43 at PageID.206 (citing *May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (holding that denial of outdoor exercise for 21 days with no medical effects did not amount to a substantial deprivation under the Eighth Amendment); *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir. 1988) (upholding district court injunction requiring that prisoners confined in segregation for 90 or more consecutive days be given at least five hours of exercise outside his cell per week); and *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (concluding that there was no Eighth Amendment violation when the plaintiff was held in segregation without outdoor exercise for 28 days))).

"Physical exercise is a necessity of civilized life. Unnecessary or extreme restriction of inmates' opportunity for fresh air, exercise and recreation may rise to the level of an Eighth Amendment violation." *Jones v. Stine*, 843 F. Supp. 1186, 1192 (W.D. Mich. 1994) (citing *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *Pressley v. Brown*, 754 F. Supp. 112, 116 (W.D. Mich. 1990)). The Sixth Circuit has declined to set a constitutionally required minimum amount of exercise, instead observing that a court should consider factors such as "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise." *Patterson*, 717 F.2d at 289. The Sixth Circuit has also recognized that penological

14

justification could support a deprivation of "total or near-total" exercise. *Rodgers v. Jabe*, 43 F.3d 1082, 1088 (6th Cir. 1995).

Here, Defendants contend that a penological justification existed for keeping Plaintiff in the holding cell under conditions resulting in the denial of out-of-cell exercise for 26 days. That is, as noted above, Plaintiff was placed the holding cell to honor his protection request while LCF was under quarantine for COVID-19. (ECF No. 43 at PageID.206–07.) But even if these conditions did not preclude providing Plaintiff an opportunity for yard time during the 26 days at issue, Plaintiff has not presented evidence showing that he suffered any negative physical or mental effects as a result of the lack of exercise during this time, nor has he shown that he had a particularized need for exercise or yard time. Moreover, Plaintiff fails to show that, as of January 2022, when he was housed in the holding cell, a denial of out-of-cell exercise for 26 days violated clearly established law under the facts presented here. For example, in *Rodgers*, the Sixth Circuit concluded that the defendants were entitled to qualified immunity for not allowing an inmate in punitive segregation to have out-of-cell exercise for 31 days. 43 F.3d at 1089; *see also Brown v. Prelesnik*, No. 1:12-cv-873, 2013 WL 838289, at *15 (W.D. Mich. Mar. 6, 2013) (concluding that the plaintiff's allegation that he was deprived of outdoor exercise for a little more than a month failed to allege a constitutional violation). Therefore, I recommend that the Court conclude that Defendants are entitled to qualified immunity on this aspect of Plaintiff's claim as they did not violate his clearly established rights to yard time or out-of-cell exercise.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion for summary judgment (ECF No. 42) and dismiss Plaintiff's complaint with prejudice.

Dated: November 14, 2025     /s/ Sally J. Berens
                              SALLY J. BERENS
                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).